## UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **ALAN ROTHSTEIN,** individually, and on behalf of others similarly situated, | Case No. 2:17-cv-13045-AJT-RWS |
| *Plaintiff*, | Honorable Arthur J. Tarnow |
| *v.* | Magistrate Judge R. Steven Whalen |
| **MICHIGAN FIRST CREDIT UNION**, | |
| *Defendant.* | |

### DEFENDANT MICHIGAN FIRST CREDIT UNION'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND STRIKE PURSUANT TO RULE 12(F)

Pursuant to Rule 12(b)(6), Defendant Michigan First Credit Union respectfully moves to dismiss the Complaint or to strike certain portions of it.  The reasons are set forth in the attached memorandum of law.  Pursuant to L.R. 7.1, the undersigned certifies that on November 20, 2017, he sought concurrence by telephone from plaintiff's counsel, but concurrence was denied.

Respectfully submitted,

/s/Don W. Blevins
Donald W. Blevins (P64146)
Marcus Sanborn (P69565)
**BLEVINS SANBORN JEZDIMIR ZACK PLC**
1842 Michigan Ave.
Detroit, MI 48216
p & f: (313) 338-9500
dblevins@bsjzlaw.com
msanborn@bsjzlaw.com

Dated: November 20, 2017        *Counsel for Defendant Michigan First Credit Union*

# UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **ALAN ROTHSTEIN,** individually, and on behalf of others similarly situated, | Case No. 2:17-cv-13045-AJT-RWS |
| *Plaintiff*, | Honorable Arthur J. Tarnow |
| *v.* | Magistrate Judge R. Steven Whalen |
| **MICHIGAN FIRST CREDIT UNION**, | |
| *Defendant*. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHIGAN FIRST CREDIT UNION'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND STRIKE PURSUANT TO RULE 12(F)

# **TABLE OF CONTENTS**

Table of Authorities ..................................................................................iii

Questions Presented ..................................................................................v

Controlling Authority for the Relief Sought ................................................vi

Introduction ..............................................................................................1

Background ...............................................................................................3

   I.       The Causes of Action. ..................................................................3

   II.      The Agreements ...........................................................................4

       A. Membership Agreement. ............................................................4

       B. Opt-In form. .............................................................................4

Argument ..................................................................................................7

   I.       Motion to Dismiss .......................................................................7

       A. Legal Standards .........................................................................7

       B. Plaintiff's Contract Claims Ignore the Plain Contract Language. ...........7

       C. There Can be No Breach of Implied Covenant of Good Faith and
          Fair Dealing Where the Conduct is Permitted by Contract. ..................12

       D. The Claim for Unjust Enrichment Is Barred Because a Written
          Contract Exists Between the Parties. ...........................................13

       E. Money Had and Received ............................................................15

       F. Violation of Electronic Fund Transfers Act ('Regulation E") .................17

       G. Violation of Connecticut Unfair Trade Practices Act.............................20

   II.      Motion to Strike...........................................................................22

       A. Legal Standards .........................................................................22

       B. Regulation E Class Should Be Reduce to One Year Prior to Filing........22

       C. Rule 12(f) Motion to Strike Scandalous and Immaterial
          Allegations. ...............................................................................23

Conclusion.................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*AFT Michigan v. Michigan*, 303 Mich. App. 651, 846 N.W.2d 583, appeal granted, 495 Mich. 1002, 846 N.W.2d 544 (2014) and aff'd sub nom. *AFT Michigan v. State of Michigan*, 497 Mich. 197, 866 N.W.2d 782 (2015)........14

*Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 666 N.W.2d 271 (2003) ...........14

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir.1994) ...........................................................1

*Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 219 A.2d 332 (App. Div. 1966)....................................................................................................................14

*Chambers v. NASA Federal Credit Union*, 222 F.Supp. 3d 1(U.S.D.C. 2016) ........... 9, 10

*Chambers*,  222 F.Supp. 3d at 13 ............................................................................13

*Comcast of Or. II, Inc., v. City of Eugene*, 209 P.3d 800 (Or. 2009) ...............................16

*Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 61 Cal.Rptr.2d 707 (1997)........16

*Fed. Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 341 A.2d 399 (1975)............................11

*Hassler v. Sovereign Bank*, 374 Fed. Appx. 341 (3rd Cir. 2010) ...................................12

*Herman v. Gleason*, 126 F.2d 936 (6th Cir. 1942)......................................................15

*In re Brown*, 342 F.3d 620 (6th Cir. 2003) ................................................................7

*In re Rankin*, 2006 WL 96852 (Bankr. E.D. Mich. Sept. 11, 2006)...........................15

*Kandel v. Brother Int'l Corp.*, 2009 WL 9100406 (C.D. Cal. 2009)..............................16

*Klein v. HP Pelzer Auto. Sys., Inc.*, 306 Mich. App. 67, 854 N.W.2d 521 (2014) appeal denied, 497 Mich. 959, 858 N.W.2d 465 (2015) .....................................8

*Martin v. East Lansing School Dist.*, 193 Mich. App. 166, 483 N.W.2d 656 (1992)....................................................................................................................14

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005) ..........................................................7

*Morris Pumps v. Centerline Piping*, Inc., 273 Mich. App. 187; 729 N.W.2d 898 (2006)............................................................................................. 14, 15, 17

*Nat'l City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598 (Ohio 1953)................8

*Pilgrim v. Universal Health Card*, LLC, 660 F.3d 943 (6th Cir. 2011).........................22

*Powell v. Sheets*, 251 P.2d 108 (Or.1952)...................................................................17

*Ramirez v. Baxter Credit Union*, Case No. 16-cv-03765-SI (N.D. Cal 3/21/2017) ................................................................................23

*Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir.1980).....................1

*Sagebrush Dev., Inc. v. Moehrke*, 604 P.2d 198 (Wyo. 1979) ............................7

*Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, 2011 WL 1193647 (E.D. Mich. 2011) .............................................15

*Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 205 (C.D. Cal. 2008) .............23

*Smith v. First Union Nat'l Bank of Tenn.*, 958 S.W. 2d 113 (Tenn. App. Ct. 1997)......20

*Smith v. Globe Life Ins. Co.*, 460 Mich. 446; 597 N.W.2d 28 (1999) ...........................21

*Song v. City of Elyria*, 985 F.2d 840 (6th Cir.1993) ......................................................1

*St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co.*, 158 A.2d 825 (1960)...................14

*Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623 (6th Cir. 2013).......................................7

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519 (1994)..........................14

*Wells Fargo Bank, NA v. Cherryland Mall Ltd. Partnership*, 300 Mich. App. 361, 835 N.W.2d 593 (2013)..............................................................................8

## Statutes

15 U.S.C. §1693m(g)....................................................................................22
MCL § 445.904(1)(a)....................................................................................21
MCL § 550.601 ............................................................................................21

## Rules

12 C.F.R. § 1005.17 ......................................................................................17
12 C.F.R. § 229.15 ........................................................................................20
Fed. R. Civ. P. 12(b)(6)...................................................................................7
Fed.R.Civ.P. 12(f)........................................................................................22
*Stanbury Law Firm v. IRS*, 221 F.3d 1059 (8th Cir. 2000) ...........................22

## Treatises

2 Moore's Federal Practice 12.37 (3d ed. 2002)..................................................22
5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (3d ed.1990).......................................................................................................1
*Fischer & Mandell LLP v. Citibank, N.A.*, 2010 WL 2484205 (S.D.N.Y. 2010) .........13
*Shapiro v. Am.'s Credit Union*, 2013 WL 5373269 (W.D. Wash. Sept. 25, 2013) ......13
*Webb v. Republic Bank & Trust Co.*, 2013 WL 5447709 (W.D. Ky. 2013)......... 13, 20

## <u>QUESTIONS PRESENTED</u>

**I.   Should this Court dismiss the claims against Defendant Michigan First Credit Union pursuant to Rule 12(b)(6)?**

Michigan First Credit Union answer: "Yes."

**II.   Should this Court strike certain portions of the Complaint pursuant to Rule 12(f)?**

Michigan First Credit Union answer: "Yes."

## <u>CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT</u>

- Rule 12(b)(6)

- Rule 12(f)

## <u>INTRODUCTION</u>

This putative class action suit arises out of overdraft fees that were charged

when Plaintiff Alan Rothstein failed to maintain sufficient funds in his checking

account to cover the charges he presented for payment against his account. Plaintiff

was a member of Defendant Michigan First Credit Union ("Michigan First") and

maintained a checking account. (Dkt 1, Complaint, at ¶ 3.) When Plaintiff opened

his account, he entered into a Membership Account Agreement ("Membership

Agreement"), which set out the terms under which Michigan First would provide a

checking account.  (Membership Agreement attached as Exhibit 1.) [1]

Michigan First also provided an Opt-In form, which Plaintiff accepted,

entitling Michigan First to honor transactions despite an overdraft and charge a fee

for the service, which was known as its "Money Now" service. ("Opt-in Form,

---

[1] Federal Rule of Civil Procedure 12(b) does not require a court to convert a motion to dismiss, despite a party's submission of extrinsic evidence, where one or more of the following exists: (1) the evidence consists of proceedings of which the court is permitted to take judicial notice, *see Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir.1980); (2) the documents' contents are alleged in the plaintiff's complaint, and their authenticity is unchallenged, *see Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); and (3) the defendant's attachment of extrinsic material to its motion to dismiss does not rebut, challenge, or contradict anything in the plaintiff's complaint, *see Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir.1993); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 n. 23 (3d ed.1990).

Exhibit 2.)  The Opt-In Form, which precisely follows a federal model form, informed Plaintiff that, if he chose to opt-in, Michigan First may, at its discretion, honor transactions that would cause an overdraft and charge an over-draft fee.

Plaintiff concedes that he entered into both the Membership Agreement and the federally mandated Opt-In Form, and thus was aware that overdraft fees would be applied if Michigan First chose to honor a transaction that resulted in an overdraft.  Nonetheless, Plaintiff makes two arguments in an attempt to avoid the assessment of overdraft fees:

(1) that Michigan First improperly used the available account balance to determine whether there was an overdraft instead of Plaintiff's preferred actual account balance method, which fails to account for transactions that Plaintiff has made but that have not yet cleared; and

(2) that Michigan First's opt-in form fails, despite following the federally mandated example, because it does not specify which of the two methods—available or actual—will be used to assess overdraft fees.

The Court should reject both arguments and dismiss the complaint because the Membership Agreement clearly explains that holds will reduce a member's available balance, and Michigan First followed the form set forth in Regulation E. In the event the Court were to deny Michigan First's motion to dismiss the complaint in its entirety, Michigan First requests that the Court strike portions of complaint and strike Plaintiff's Regulation E class to the extent it spans more than one year prior to the filing of the complaint.

2

## BACKGROUND

The following facts are drawn from the complaint and assumed true for Rule 12(b)(6) purposes.

### I.  The Causes of Action.

Plaintiff Alan Rothstein is a resident of Southfield, Michigan and was a member of Michigan First Credit Union. (Complaint, ¶5.)  Plaintiff alleges that, while a member of Michigan First, he was assessed overdraft fees when, if the actual account balance method had been used, his account would have had sufficient funds to pay the transactions.  (Complaint, ¶ 36.)  Plaintiff provides a single example, an assessment of a $31 overdraft fee on November 13, 2012. (*Id.*) Citing that alleged wrong, Plaintiff brings the following causes of action on his behalf and on behalf of two distinct classes:

- A.  Breach of Opt-In Contract (First Cause of Action)

- B.  Breach of Account Agreement Contract (Second Cause of Action)

- C.  Breach of Implied Covenant of Good Faith and Fair Dealing (Third Cause of Action)

- D.  Unjust Enrichment/Restitution (mislabeled Third Cause of Action)

- E.  Money Had and Received (Fourth Cause of Action)

- F.  Violation of Electronic Fund Transfers Act ('Regulation E") (Fifth Cause of Action)

- G.  Violation of Connecticut Unfair Trade Practices Act (Sixth Cause of Action)

3

## II. The Agreements

### A. Membership Agreement.

When a member opens an account at Michigan First, they must accept Michigan First's Membership Agreement.  As noted in the complaint, the Membership Agreement stated: "As long as you have money in your checking account, and subject to any applicable state or federal…regulations, and the Credit Union's Bylaws, you may withdraw money from your account by a check or any other method approved by the Credit Union." (Complaint, ¶22.)  The complaint acknowledges that the Membership Agreement further explains: "[T]he Credit Union is under no obligation (unless it has contracted to the contrary) to pay a check you have written if it would result in this checking account being overdrawn (a check written against your checking account when sufficient *available funds* are not on deposit in the account…" (*Id.*, emphasis added.)  Plaintiff does not attach the Membership Agreement, and it is easy to see why.  As is shown further below, the Membership Agreement speaks extensively about the availability of funds and how holds placed on certain transactions might result in overdraft fees.

### B. Opt-In form.

In 2010, the Federal Reserve Board promulgated regulations permitting a financial institution to charge overdraft fees on ATM and one-time debit card transactions if it first obtained affirmative consent to do so. (12 C.F.R §1005.17, "Regulation E".)  Regulation E included a sample opt-in form that a financial

4

institution could use to ensure it complied with the regulation. (Exhibit 3.)

Pursuant to Regulation E, Michigan First prepared an Opt-In Form identical to

the Regulation E form. (Exhibit 2.)  The following table compares the Regulation E

form to the Michigan First form with the differences italicized.

| Regulation E Form (Exhibit 3) | Michigan First Form (Exhibit 2) |
|---|---|
| | *Michigan First Credit Union* |
| | *Money Now Service (Standard Overdraft Practices) and Overdraft Protection Options* |
| What You Need to Know about Overdrafts and Overdraft Fees | What You Need to Know about Overdrafts and Overdraft Fees |
| An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways: | An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways: |
| 1. We have standard overdraft practices that come with your account. | 1. We have standard overdraft practices that come with your account. |
| 2. We also offer overdraft protection plans, such as a link to a savings account, which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans. | 2. We also offer overdraft protection plans, such as a link to a savings account, which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans. |
| This notice explains our standard overdraft practices. | This notice explains our standard overdraft practices. |
| What are the standard overdraft practices that come with my account? | What are the standard overdraft practices that come with my account? |
| We do authorize and pay overdrafts for the following types of transactions: Checks and other transactions made using your checking account number Automatic bill payments | We do authorize and pay overdrafts for the following types of transactions: Checks and other transactions made using your checking account number Automatic bill payments |
| We do not authorize and pay overdrafts for the following types of transactions unless you ask us to *(see below):* | We do not authorize and pay overdrafts for the following types of transactions unless you ask us to: ATM transactions |

5

| ATM transactions Everyday debit card transactions | Everyday debit card transactions |
|---|---|
| We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction. | We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction. |
| If we do not authorize and pay an overdraft, your transaction will be declined. | If we do not authorize and pay an overdraft, your transaction will be declined. |
| What fees will I be charged if *[institution name]* pays my overdraft? | What fees will I be charged if *Michigan First Credit Union* pays my overdraft? |
| Under our standard overdraft practices: We will charge you a fee of *up to $30* each time we pay an overdraft. *Also, if your account is overdrawn for 5 or more consecutive business days, we will charge an additional $5 per day.* There is no limit on the total fees we can charge you for overdrawing your account. | Under our standard overdraft practices: We will charge you a fee of *$31.00* each time we pay an overdraft. There is no limit on the total fees we can charge you for overdrawing your account. |
| What if I want *[institution name]* to authorize and pay overdrafts on my ATM and everyday debit card transactions? | What if I want *Michigan First Credit Union* to authorize and pay overdrafts on my ATM and everyday debit card transactions? |
| If you also want us to authorize and pay overdrafts on ATM and everyday debit card transactions, call *[telephone number]*, visit *[website]*, or complete the form below and *[present it at a branch]/[mail it to:* | If you also want us to authorize and pay overdrafts on ATM and everyday debit card transactions, call *800.664.3828*, visit *michiganfirst.com*, or complete the form below and present it at a branch. |
| _____ I do not want *[institution name]* to authorize and pay overdrafts on my ATM and everyday debit card transactions. | _____ I do not want *Michigan First Credit Union* to authorize and pay overdrafts on my ATM and everyday debit card transactions. |
| _____ I want *[institution name]*  to authorize and pay overdrafts on my ATM and everyday debit card transactions. | _____ I want *Michigan First Credit Union* to authorize and pay overdrafts on my ATM and everyday debit card transactions. |

## ARGUMENT

### I. Motion to Dismiss

#### A. Legal Standards

In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), this Court must accept all material allegations contained in the complaint as true, and construe them in the light most favorable to the non-moving party. *See Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). To survive a motion to dismiss, a "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions cloaked as factual allegations will not suffice to survive a motion to dismiss. *Id.*

#### B. Plaintiff's Contract Claims Ignore the Plain Contract Language.

Plaintiff brings two separate counts for breach of the Op-In Contract and Breach of the Membership Agreement. To state a claim for breach of contract in Michigan, a plaintiff must demonstrate (1) the existence of a valid contract between the parties; (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003.) "A breach of contract is a failure without legal excuse to perform any promise which forms a whole or a part of a contract. *Sagebrush Dev., Inc. v. Moehrke*, 604 P.2d 198, 201 (Wyo. 1979) (citing *Nat'l*

7

*City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598 (Ohio 1953)).  Finally, "[a]

contract must be interpreted according to its plain and ordinary meaning." *Klein v.*

*HP Pelzer Auto. Sys., Inc.*, 306 Mich. App. 67, 75-76, 854 N.W.2d 521, 526 (2014)

appeal denied, 497 Mich. 959, 858 N.W.2d 465 (2015) (quoting *Wells Fargo Bank,*

*NA v. Cherryland Mall Ltd. Partnership*, 300 Mich. App. 361, 386, 835 N.W.2d 593

(2013)).

Plaintiff alleges that Michigan First breached its contracts because it used

available balance as opposed to actual balance to calculate an overdraft.  Plaintiff

acknowledges, as he must, that there is nothing improper in using available account

balance.[2]  Instead, Plaintiff argues that the Opt-In form and Membership

Agreement do not properly disclose that available account balance will be the

method used to determine when an overdraft is present.  Plaintiff bases his entire

argument on language contained in the Opt-In form that Michigan First would

charge overdraft fees "only if his account did not have money to cover the

transaction." (Complaint, ¶ 36.)  However, this language is silent on the central

issue of this case: whether actual or available account balance would be used to

---

[2] The Consumer Finance Protection Bureau's Overdraft Report discusses the use of available balance by institutions. If use of available balance was prohibited, the CFPB would certainly have said as much in the report. See Pages 42-43 of the CFPB's 2013 Overdraft Report, available at http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.

determine whether sufficient funds were in the account.  Plaintiff then argues "it is reasonable to interpret and understand that as referring to the official balance in the account—which is the balance without deduction for pending debit card transactions or deduction for holds on deposits."  It is improper, however, to "interpret and understand" this language in a vacuum when the Membership Agreement explains that overdraft fees will be assessed based on available balance.

The Membership Agreement is attached as Exhibit 1 to this brief.  It resolves any ambiguity that Plaintiff alleges.  Thus:  "Available Balance is the balance in your account available for withdrawal. Transactions authorized but not yet posted to your account and holds placed on deposited checks will reduce your available balance." (Ex. 1, Membership Agreement, at 15.)  Further:  "If you use your Card for a transaction that would cause your available account balance to go below zero . . . you agree to pay the full amount of it to us together with an overdrawn account charge . . . ." (*Id.* at 19, ¶ XI.Y (emphasis added).

The U.S District Court for the District of Columbia has considered similar language and concluded that it resolves any ambiguity over which account balance will be used.  In *Chambers v. NASA Federal Credit Union*, Plaintiff alleged that the credit union's opt-in form and membership agreement misled her about the circumstances in which she would be assessed overdraft fees on debit transactions. 222 F.Supp. 3d 1, 4-5 (U.S.D.C. 2016). Plaintiff sought to represent two classes

identical to the classes at issue here: an actual balance class and a Regulation E class. (*Id* at 6.)  In addressing the language of the opt-in agreement and membership agreement, the court noted: "It is the court's role to determine whether a contract is ambiguous." (*Id.* at 9.)  The opt-in agreement contained language identical to that here: "overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." (*Id.* at 10.) Plaintiff argued that this language favored the use of the actual account balance, while defendant argued for the use of the available account balance. (*Id.*)

To resolve this issue, the Court looked to other language in the agreements between the parties.  The Court cited the following language contained in the membership agreement:

> "You authorize us to charge the account you designate for each Transaction and you will have sufficient collected funds available in the account for that purpose" . . . . If, on the other hand, "any Transaction you request exceeds the balance of available collected funds in the account either at the time you request the transaction or at any later time that your account is scheduled to be debited, we need not make such Transaction and will not be liable to you if we don't" . . . Finally, if the Credit Union elects to pay the transaction anyway, "an overdraft will be created." Id. at 34, ¶ H(1)(i).

(*Id.* at 10-11.) The above language is substantially similar to that at issue here, where Michigan First explained to Plaintiff that if "you use your Card for a transaction that would cause your available account balance to go below zero...

you agree to pay… an overdrawn account charge…"[3] (Exhibit 1 at §XI.Y.)

Just as Plaintiff alleges here, the Plaintiff in *Chambers* argued that use of terms such as "enough" and "sufficient" necessitate the use of the actual account balance. The court disagreed, noting: "By arguing for use of the actual balance here, Chambers encourages the Court to interpret this section of the account agreement's general Terms and Conditions so as to conflict with its provisions governing debit transactions and with the opt-in agreement…" (*Chambers*,  222 F.Supp. 3d at 12.)  The court noted the "well-established rule of contractual construction that where two provisions of a contract are seemingly in conflict, they must, if possible, be construed to effectuate the intention of the parties as collected from the whole instrument…."  (*Id.*)  It further cited the proposition that conflicting provisions should be construed so that specific provisions control general ones. *See Fed. Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 341 A.2d 399, 407 (1975).  That meant "giving precedence to the clearer, more specific terms of the account agreement's provisions governing debit transactions and the opt-in agreement. The account agreement itself seems consistent with that approach." (*Id.*)

Based on this reasoning, the District Court in *Chambers* concluded that the "agreements not only use the phrase [available balance], but use it in critical

---

[3] In Chambers, the court also looked to additional language contained in the op-in agreement that is not present in the Michigan First Opt-In Agreement.

provisions dealing specifically with overdrafts and debit transactions—the subject

matter of this case. (*Id.*)  Thus, the court held:

> Having reviewed the agreements and the parties' briefs, the Court
> cannot locate the promise that Chambers now seeks to enforce. To the
> contrary, the relevant agreements unambiguously convey that the
> Credit Union will impose overdraft fees on debit transactions that
> overdraw the available balance. Chambers' breach of contract claim
> will therefore be dismissed. Because most of her remaining claims are
> premised on her mistaken reading of the agreements, they must be
> dismissed as well. (*Id*. at 12-13.)

As in *Chambers*, Plaintiff's claims for breach of contract are flatly contradicted by the

express terms of the Membership Agreement.  As such, Plaintiff is unable to

demonstrate the third element of a claim for breach of contract: that Michigan

First breached the terms of the agreement. Plaintiff's Complaint does not identify

any actions of Michigan First that breached the terms of the agreement. *In re Brown*,

342 F.3d at 628. As such, this Court should dismiss Plaintiff's Causes of Action for

breach of contract based on the Opt-In Agreement and the Membership

Agreement.

    C.  <u>There Can be No Breach of Implied Covenant of Good Faith and
Fair Dealing Where the Conduct is Permitted by Contract.</u>

      Similarly, Plaintiff's claim for breach of the covenant of good faith and fair

dealing also fails as there is no breach of the covenant when a party does what it

stated it would do in the contract. *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341 (3rd

Cir. 2010)(not reported) (party cannot ignore contract language and argue that he

could not have expected bank's rearrangement of the charges and his incurrence of overdraft fees in the manner described); MCL 440.4303(2).  Here, again, *Chambers* is instructive.  Having dispensed with Plaintiff's breach of contract claims, the court there held that Plaintiff could not "invoke the implied covenant to require the Credit Union to do what the account and opt-in agreements do not, i.e., base overdraft fees on her actual balance."  (*Chambers*,  222 F.Supp. 3d at 13.)[4]

Michigan First acted in conformance with the Contract.  Consequently, Plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed.

D. The Claim for Unjust Enrichment Is Barred Because a Written Contract Exists Between the Parties.

Plaintiff's cause of action for unjust enrichment also must be dismissed.  The theory underlying quantum merit recovery is that the law will imply a contract to

---

[4] Other courts have routinely dismiss cases such as this when the allegations are directly refuted by the actual contract. *See Shapiro v. Am.'s Credit Union*, 2013 WL 5373269, at \*2 (W.D. Wash. Sept. 25, 2013) (dismissing claims for breach of contract and EFTA violation because the credit union's contract properly disclosed its overdraft policy, notwithstanding plaintiff's allegations to the contrary);  *Fischer & Mandell LLP v. Citibank, N.A.*, 2010 WL 2484205 at \*5-6 (S.D.N.Y. 2010) (holding that plaintiff's breach of contract claim failed as a matter of law because financial institution's account agreements clearly described its policies for deposit and clearance of checks and the financial institution acted in compliance with those provisions); *Webb v. Republic Bank & Trust Co.*, 2013 WL 5447709 at \*4 (W.D. Ky. 2013) (dismissing plaintiff's breach of contract claim, in part, because "the terms governing the parties' relationship authorized Defendant to charge overdraft fees to Plaintiff's account based on high-to-low sequencing" and "[t]herefore, Plaintiff's breach of contract claim is therefore without merit").

prevent unjust enrichment when one party inequitably receives and retains a benefit from another. *Martin v. East Lansing School Dist.*, 193 Mich. App. 166, 177, 483 N.W.2d 656 (1992). "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271 (2003); *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 194-195; 729 N.W.2d 898 (2006).  Here, Plaintiff has alleged the existence of an express written contract between the parties. (*See, e.g.*, Complaint, ¶¶ 21, 36.)

Additionally, the Court should dismiss the claim for unjust enrichment because, to sustain such a claim, "a plaintiff must demonstrate (1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to plaintiff as a result." *AFT Michigan v. Michigan*, 303 Mich. App. 651, 660-61, 846 N.W.2d 583, 590 appeal granted, 495 Mich. 1002, 846 N.W.2d 544 (2014) and aff'd sub nom. *AFT Michigan v. State of Michigan*, 497 Mich. 197, 866 N.W.2d 782 (2015). A party cannot show retention would be unjust unless it can establish that "the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519, 526 (1994) (citing Associates Commercial Corp., supra, 511 A.2d 709; *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 219 A.2d 332 (App. Div. 1966); *St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co.*, 158 A.2d 825 (1960)).  The agreements between the parties stated

14

how Michigan First would charge for overdrafts. Michigan First was not enriched

beyond what the parties agreed to in the Contract, and as a result this claim should

be dismissed.

     E.  Money Had and Received

Plaintiff's fourth claim is for money had and received, and is also pled in

summary fashion in contravention of *Iqbal* and *Twombley*. (Complaint at ¶¶ 52-54.)

In Michigan, a claim for "money had and received" is treated as a claim for unjust

enrichment. *Herrman v. Gleason*, 126 F.2d 936, 940 (6th Cir. 1942); *Santander*

*Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, 2011 WL 1193647 *5 n. 3

(E.D. Mich. 2011) (unpublished). Thus, this claim should be dismissed on the same

grounds that Plaintiff's unjust enrichment claim should be dismissed—these

equitable theories are not available here because a written contract existed between

the parties. *See Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 194-95,

729 N.W.2d 898 (2006). *See also, In re Rankin*, 2006 BL 96852, *11 (Bankr. E.D.

Mich. Sept. 11, 2006) (holding that a claim "For Money Had and Received is not

recognized as a cause of action under Michigan law").

The core allegation is that Plaintiff paid overdraft fees that he should not

have had to pay; thus, Michigan First should return the money to him. First, as set

forth above, the claim fails because the Contract expressly states that overdrafts will

be determined by available funds. (Exhibit 1.) The cause of action also fails because

it was not pled properly. "A cause of action for money had and received is stated if it is alleged the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Kandel v. Brother Int'l Corp.*, 2009 WL 9100406 at *1 (C.D. Cal. 2009)(citing *Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 460, 61 Cal.Rptr.2d 707 (1997)(emphasis added). To properly allege a cause of action for money had and received, Plaintiff was required to allege "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *Kandel*, 2009 WL 9100406 at *1 (emphasis added). When a plaintiff merely repackages his other claims for damages as a claim for money had and received, the claim is properly dismissed with prejudice. *Id.*

Here, the Plaintiff has merely repackaged his other claims as a claim for money had and received. He is claiming the same thing as in his breach of contract, negligence and unjust enrichment claims:  that he incurred overdraft fees that he should not have had to pay. As such, the Court should dismiss the claim with prejudice.

Finally, the cause of action for money had and received "is based on a promise implied by law or quasi contract and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution." *Comcast of Or. II, Inc., v. City of Eugene*, 209 P.3d 800, 809 (Or. 2009)

(quoting *Powell v. Sheets*, 251 P.2d 108, 116–17 (Or.1952)). Here, there is an express contract between the parties that governs their rights, duties and obligations. When an express contract exists, a promise implied by law cannot be maintained. *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 194-95, 729 N.W.2d 898 (2006)

Finally, even if the Court were inclined to allow it as a separate and distinct cause of action, Plaintiff has not sufficiently pled the cause of action because Plaintiff has not pled a sum certain. Accordingly, the Plaintiff's fourth cause of action should be dismissed with prejudice.

F.  Violation of Electronic Fund Transfers Act ('Regulation E")

Plaintiff's claim for relief alleging violation of the Electronic Fund Transfer Act ("EFTA") should also be dismissed. (ECF 1 at ¶¶ 59-62). Michigan First uses model language, and its compliance with federal law is evident by simply reviewing the face of the actual document. Title 12 of the Code of Federal Regulations ("C.F.R.) governs banks and banking transactions. 12 C.F.R. § 1005.17 governs what may and may not be put into the opt-in notice for overdraft programs. 12 C.F.R. § 1005.17(d) mandates:

> (d) Content and format. The notice required by paragraph (b)(1)(i) of this section shall be substantially similar to Model Form A–9 set forth in appendix A of this part, include all applicable items in this paragraph, and may not contain any information not specified in or otherwise permitted by this paragraph.

> (1) Overdraft service. A brief description of the financial institution's overdraft service and the types of transactions for which a fee or

charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions.

(2) Fees imposed. The dollar amount of any fees or charges assessed by the financial institution for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, including any daily or other overdraft fees. If the amount of the fee is determined on the basis of the number of times the consumer has overdrawn the account, the amount of the overdraft, or other factors, the institution must disclose the maximum fee that may be imposed.

(3) Limits on fees charged. The maximum number of overdraft fees or charges that may be assessed per day, or, if applicable, that there is no limit.

(4) Disclosure of opt-in right. An explanation of the consumer's right to affirmatively consent to the financial institution's payment of overdrafts for ATM and one-time debit card transactions pursuant to the institution's overdraft service, including the methods by which the consumer may consent to the service; and

(5) Alternative plans for covering overdrafts. If the institution offers a line of credit subject to Regulation Z (12 CFR part 1026) or a service that transfers funds from another account of the consumer held at the institution to cover overdrafts, the institution must state that fact. An institution may, but is not required to, list additional alternatives for the payment of overdrafts.

(6) Permitted modifications and additional content. If applicable, the institution may modify the content required by § 1005.17(d) to indicate that the consumer has the right to opt into, or opt out of, the payment of overdrafts under the institution's overdraft service for other types of transactions, such as checks, ACH transactions, or automatic bill payments; to provide a means for the consumer to exercise this choice; and to disclose the associated returned item fee and that additional merchant fees may apply. The institution may also disclose the consumer's right to revoke consent. For notices provided to consumers who have opened accounts prior to July 1, 2010, the financial institution may describe the institution's overdraft service with respect to ATM and one-time debit card transactions with a statement such as "After August 15, 2010, we will not authorize and

18

pay overdrafts for the following types of transactions unless you ask us
to (see below).

Michigan First's Opt-In Form contains all the information required by 12 C.F.R.

1005.17. (Opt-In Form, attached as Exhibit 2.)

Furthermore, Michigan First's Opt-In Form is "substantially similar" to the

"Model Form A-9" referenced in the statute. (See Model Form A-9, attached as

Exhibit 3 and available at http://www.ecfr.gov/graphics/pdfs/er27de11.000.pdf).

The Opt-In Form informs Plaintiff that there is an overdraft service, and what it is.

(*Id.*) It identifies what the fees for using the overdraft services are, and what the

limits are on the fees. (*Id.*)  It discloses the right to opt-in to the overdraft service,

and that Michigan First offers alternative overdraft services to Plaintiff. (*Id.*)

Because the disclosures satisfy 12 C.F.R. 1005.17, this claim should be dismissed.

In *Chambers*, the Court noted financial institutions should not stray far from

the model form:  "Regulation E discourages financial institutions from liberally

adding language to opt-in agreements based on the model form."  (*Chambers*, 222 F.

Supp. 3d 1, fn. 2.)  Other courts too have dismissed claims alleging violations of the

Electronic Fund Transfer Act when the text of the actual disclosures of the

financial institution belie the allegations. For instance, in *Shapiro v. Am.'s Credit Union*

the court dismissed a claim that a credit union violated the EFTA because the

credit union's disclosure proved otherwise. 2013 WL 5373269, at *2 (W.D. Wash.

Sept. 25, 2013) (finding that allegation that credit union "did not disclose its funds

19

availability policy as required by the EFTA, 12 C.F.R. § 229.15, fails for the same reason. The Membership and Account Agreement described the Funds Availability Policy in conformance with the EFTA."); *Smith v. First Union Nat'l Bank of Tenn.*, 958 S.W. 2d 113, 116-17 (Tenn. App. Ct. 1997) (act permitted by statute cannot be the basis of a violation of consumer protection act).

Alternatively, Plaintiff's EFTA claim should be dismissed because it fails to meet the required pleading standards. The Complaint merely states that Michigan First violated the EFTA without offering any specifics as to how or why. Plaintiff's recital of the statutory language does not satisfy the pleadings standards of an EFTA claim. *Webb*, 2013 WL 5447709 at *6 (dismissing EFTA claim because Plaintiff failed to allege any specific violations of the statute). Therefore, it must be dismissed. *See Iqbal*, 556 U.S. at 678-79 (holding that "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s]" lacking "further factual enhancement" will not satisfy the requirements for initial pleadings). *See also, Sprewell*, 266 F.3d at 988.

G. Violation of Connecticut Unfair Trade Practices Act

In his final claim, Plaintiff alleges Michigan First has violated the Connecticut Unfair Trade Practices Act. Michigan First assumes that this was an error and that Plaintiff intended to bring claims under the Michigan Consumer Protection Act ("MPCA"). Nonetheless, any corrective amendment would be

futile. Plaintiff argues that Michigan First misled him by charging overdraft fees for transactions when there were funds in the accounts. (Complaint at ¶¶ 43-48.) But the MCPA does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL § 445.904(1)(a).

In *Smith v. Globe Life Ins. Co.*, 460 Mich. 446; 597 N.W.2d 28 (1999), the Michigan Supreme Court considered whether an insurer was liable under the MCPA for misrepresenting benefits, terms and conditions in its insurance policy. The insurer argued that it was exempt from liability under the MCPA because the Credit Insurance Act, MCL § 550.601, et seq., regulated insurance policies. That statutes provides" "All life insurance and all accident and health insurance sold in connection with loans or other credit transactions shall be subject to the provisions of this act." The Court concluded that under § 4(1)(a), "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." Id. at 465 (emphasis added).  Here, the Credit Union Act, MCL § 490.101, et seq. and the Michigan Department of Labor and Economic Growth Office of Financial and Insurance Services Credit Union Rules govern credit unions and their actions. Pursuant to the holding set forth in *Smith*, supra, the MCPA does not apply to

Michigan First or Plaintiff, and this claim must therefore be dismissed.

## II. Motion to Strike

### A. <u>Legal Standards</u>

Rule 12(f) of the Federal Rules of Civil Procedure provides that, on motion of a party, the Court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Courts have "liberal discretion" to strike such filings as it deems appropriate under Rule 12(f). *Stanbury Law Firm v. IRS, 221 F.3d 1059*, 1063 (8th Cir. 2000); 2 Moore's Federal Practice 12.37 (3d ed. 2002). A motion to strike should be granted where the complaint contains immaterial allegations that have no bearing on the subject matter of the litigation. *Id.* Finally, a court may resolve a class-certification question on a defendant's motion to strike class allegations even if the plaintiff has not yet moved to certify the class. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 , 949 (6th Cir. 2011).

### B. <u>Regulation E Class Should Be Reduce to One Year Prior to Filing.</u>

Plaintiff's Regulation E Class purports to consist of all members of "Michigan First who incurred an overdraft fee or overdraft fees for ATM or non-recurring debit card transaction(s) during the period beginning on August 15, 2010 and through the present." However, plaintiff's proposed six-year class period is impermissibly broad based on Regulation E's one-year statute of limitations. 15 U.S.C. §1693m(g) (an action under Regulation E "may be brought ... within one

year from the date of the occurrence of the violation").

In an identical situation, the U.S. District Court for the Northern District of California granted a defendant financial institution's motion to strike a purported Regulation E class that, like the class here, attempted to reach back six years from the filing of the complaint. *See Ramirez v. Baxter Credit Union*, Case No. 16-cv-03765-SI, (N.D. Cal 3/21/2017). There, the Court reasoned that additional discovery was not necessary, and ruled:

> A proposed class period dating back to August 15, 2010 for a cause of action with a one-year limitations period is facially invalid, absent any allegations which would extend the one-year period by discovery, equitable tolling or otherwise.

(*Id.* at p. 6-7; *see also Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 205, 1211 (C.D. Cal. 2008)(striking class allegations of unlawful conduct outside of applicable one-year limitations period). Here, Plaintiff has not alleged any tolling of the statute of limitations, nor could he, since the application of an overdraft fee becomes apparent immediately. As such, Michigan First respectfully requests that this Court strike Plaintiff's Regulation E class to the extent it purports to extend beyond a year prior to the filing of the complaint.

C. Rule 12(f) Motion to Strike Scandalous and Immaterial Allegations.

Rule 12(f) permits the Court to strike any "redundant, immaterial, impertinent, or scandalous matter." Here, Plaintiff's complaint contains numerous paragraphs discussing overdraft fees in general, their effects on the poor, and the

profits obtained from their use.  (Complaint ¶¶ 14-17, 31, 34, & 37). These allegations should be stricken for two reasons.  *First*, the allegations have nothing to do with Michigan First's conduct. Instead, they are based on the findings of third-parties related to the conduct of other third-parties. Such evidence would be inadmissible and is not necessary for Plaintiff to prove its case here. *Second*, even if permissible against a for-profit bank, Plaintiff's immaterial and scandalous allegations do not apply to non-profit credit unions. Plaintiff would like to use these studies and allegations cited in the Complaint to tar Michigan First with the claim that it is using the overdraft charges to maximize its profits. Plaintiff fails to disclose or acknowledge the distinction between a bank and a credit union. Credit unions are nonprofit cooperatives, owned by their members, that return earnings to members through lower rates on loans, higher rates on deposits and lower fees. Michigan First is a Michigan-chartered credit union. (Complaint at ¶ 6.) Like all other credit unions, Michigan First is not run for profit; it is run for the benefit of its members. Michigan First therefore is not incentivized to unfairly charge Plaintiff or any of its other members' fees to make a profit.

For both reasons, the Court should strike these immaterial and scandalous allegations pursuant to Rule 12(f).

## **CONCLUSION**

For the reasons stated above, Michigan First's motion should be <u>granted</u>.

Respectfully Submitted,

<div style="display:flex">

BLEVINS SANBORN JEZDIMIR
ZACK PLC


<u>/s/ Don W. Blevins</u>
Don W. Blevins (P64146)
dblevins@bsjzlaw.com
Marcus R. Sanborn (P69565)
msanborn@bsjzlaw.com
1842 Michigan Avenue
Detroit, MI  48216
(313) 338.9500
*Counsel for Defendant Michigan
First Credit Union*

HOLZMAN CORKERY PLLC


Charles J. Holzman (P35625)
cholzman@holzmanlaw.com
Patricia D. Corkery (P55687)
pcorkery@holzmanlaw.com
28366 Franklin Rd
Southfield, MI 48034-5503
(248) 352-4340

Co-Counsel for *Defendant Michigan
First Credit Union*

</div>

Dated: May 30, 2017

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2017, I electronically filed the

foregoing document with the Clerk of the Court using the ECF System which will

send notification to counsel of record.

<div style="text-align: right;">

Respectfully submitted,

/s/Don W. Blevins
Don W. Blevins (P64146)
Marcus Sanborn (P69565)
**BLEVINS SANBORN JEZDIMIR ZACK PLC**
1842 Michigan Ave.
Detroit, MI 48216
p & f: (313) 338-9500
dblevins@bsjzlaw.com
msanborn@bsjzlaw.com

</div>

Dated: November 20, 2017

<div style="text-align: right;">

*Counsel for Defendant Michigan First Credit Union*

</div>